IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BARRY S. NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:14-cv-00002 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF DANVILLE, VIRGINIA, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Plaintiff Barry S. Neal ("Plaintiff") filed this suit against Defendant the City of Danville, Virginia ("Defendant" or "the City") on January 7, 2014, seeking a declaratory judgment that the City violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA") when it cancelled his health insurance benefits after he failed to return to work following the exhaustion of his Family Medical Leave Act ("FMLA") leave, despite the fact that Plaintiff was never terminated and continued on paid sick leave. (See Compl. ¶¶ 7, 23–26 [ECF No. 1].) The parties filed cross motions for summary judgment and agree that the only dispute between them is a legal one: whether Plaintiff experienced a "qualifying event" sufficient to invoke COBRA continuation coverage. I have reviewed the facts, the arguments of the parties, and the relevant law and precedents. For the reason stated herein, I will deny Plaintiff's motion for summary judgment [ECF No. 19], and I will grant the City's motion for summary judgment [ECF No. 11].

I.     STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

There does not appear to be any dispute over the facts of this case. Plaintiff has been employed by the City as a firefighter since April 15, 1987. (Compl. ¶ 9.) As a firefighter, and as a benefit of employment, Plaintiff accumulated approximately 2,000 hours of "sick leave." (Id. ¶ 10.) The City's sick-leave policy provided Neal with full pay when used. (See id.).

On February 1, 2013, Plaintiff was severely injured in a non-work related accident. (Id. ¶ 8.) For the next two weeks, Plaintiff began drawing down his sick leave. (See Aff. of Wendy Carter ¶ 7, Oct. 13, 2014 [ECF No. 12-1].) On February 15, 2014, the City placed Plaintiff on FMLA leave.[1] (Id.) Plaintiff did not request to be placed on leave pursuant to the Family Medical Leave Act ("FMLA") and did not want to utilize his FMLA leave. (Aff. of Barry Neal ¶ 5, Nov. 17, 2014 [ECF No. 18-1].) During the entire 12-week period during which Plaintiff was on FMLA leave, he was simultaneously continuing to draw on his banked sick-leave hours, resulting in continuous pay during his entire FMLA-leave period. (Id. ¶ 4.) At the conclusion of Plaintiff's 14-week leave period (two weeks of only sick leave, then twelve weeks of FMLA and sick leave), the City informed Plaintiff that his health insurance benefits would be cancelled on May 14, 2013, due to exhaustion of his FMLA leave. (See Carter Aff. Ex. 5.) The City's Administrative Policy and Procedure concerning FMLA states that, "[i]n all cases, at the point of FMLA leave exhaustion, the employee's benefits will be subject to COBRA and/or direct billing, as applicable, based upon the benefit." (Id. Ex. 2.)

Despite the fact that Plaintiff was not able to return to work upon the exhaustion of his FMLA leave, the City did not terminate his employment. Plaintiff continued to utilize his sick leave after his FMLA leave was exhausted. (See Neal Aff. ¶¶ 4, 6, 8.) On May 15, 2013, the City cancelled Plaintiff's health insurance pursuant to the City's policy that it "will not pay health insurance benefit coverage for employees that are unable to return to work upon the exhaustion of [the FMLA] benefit period. The City of Danville does not provide coverage in

---

[1] The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., mandates that qualifying employees be granted up to twelve weeks of unpaid leave per year for personal medical reasons or for the care of a sick family member. See 29 U.S.C. § 2601(b)(2) (2014). Following the exhaustion of one's leave, an employee is entitled to return to his or her former position or an equivalent position with equivalent benefits. See id. § 2614(a)(1). An employer is required to maintain coverage under any group health plan for the duration of the employee's FMLA leave. Id. § 2614(c).

excess of the requirements of the FMLA." (Carter Aff. ¶ 11.)  Pursuant to COBRA, the City gave Plaintiff the opportunity to continue his health insurance benefits through COBRA election, meaning that he had to pay all premiums associated with coverage.  (See id.)  Plaintiff ultimately paid approximately $1,871.99 in premiums after his FMLA leave was exhausted.  (Neal Aff. ¶ 9.)  On July 17, 2013, Plaintiff was cleared to return to work.  (Id. ¶ 8.)  He returned to work at the same position and all his benefits were restored.  (Id. ¶ 9.)

On January 7, 2014, Plaintiff filed suit in this Court seeking a declaratory judgment that the City violated COBRA when it cancelled his insurance benefits.  (See Compl. ¶¶ 23–26.)  The City filed its Answer on April 29, 2014.  [ECF No. 7.]  On October 13, 2014, the City filed its Motion for Summary Judgment [ECF No. 11], and Plaintiff filed his Motion for Summary Judgment on November 17, 2014.  [ECF No. 19.]  I heard oral arguments on both motions on December 5, 2014.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009).  A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists.  Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254.  A fact is material where it might affect the outcome of the

- 3 -

Case 4:14-cv-00002-JLK-RSB   Document 26   Filed 12/11/14   Page 3 of 8   Pageid#: 233

case in light of the controlling law.  Anderson, 477 U.S. at 248.  On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts.  Scott, 550 U.S. at 380.  At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial.  Anderson, 477 U.S. at 249.  It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature.  Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III. DISCUSSION

Congress passed the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161 et seq., which amended the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., to require most group health plans to provide continuation of group health coverage in instances where an employee's coverage might otherwise cease. COBRA requires that a plan sponsor provide an employee the opportunity to elect continuation of health insurance coverage under the same terms of the employer's health plan after some "qualifying event" that would otherwise end the employee's health insurance coverage.  See 29 U.S.C. § 1161 (2014).  As is relevant here, a "qualify event" is defined as:

> [A]ny of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary . . . (2) [t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

Id. § 1163(2).  Plaintiff takes the position that no "qualifying event" occurred because the City did not require him to work during his paid sick leave.  The City takes the position that

- 4 -

Case 4:14-cv-00002-JLK-RSB   Document 26   Filed 12/11/14   Page 4 of 8   Pageid#: 234

Plaintiff's use of his sick leave was a reduction in the hours he actually worked, and thus, a qualifying event did occur.

In their briefs and argument to the Court, the parties seem to overlook an important distinction. It is not enough to trigger COBRA that Plaintiff experienced a "reduction in hours." "A reduction in hours is only a qualifying event under [29 U.S.C.] § 1163 if it 'would result in a loss of coverage.'" Jachim v. KUTV, Inc., 783 F. Supp. 1328, 1332 (D. Utah 1992) (quoting 29 U.S.C. § 1163). With this in mind, there are two questions that must be answered: (1) did Plaintiff experience a reduction in hours; and (2) but for his election of COBRA continuation coverage, would that reduction have resulted in Plaintiff's loss of his group health insurance?

To answer the first question, both parties stipulate that the Treasury Regulation's definition of a "reduction in hours" controls.[2] As is applicable to the present case, a "reduction in hours" occurs "whenever there is a decrease in the hours that a covered employee . . . actually works . . . ." 26 C.F.R. § 54.4980B-4(A-1)(e).[3] When Plaintiff did not return to work following the exhaustion of his FMLA leave, the number of hours he "actually worked" decreased to zero. Accord id. ("[A]n absence from work due to a disability, a temporary layoff, or any other reason (other than due to leave that is FMLA leave) is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment."); Lutheran Hosp. of Indiana, Inc. v. Business Men's Assurance Co. of Am., 845 F. Supp. 1275, 1283–84 (N.D. Ind. 1994) (holding that an employee's use of sick leave constituted a reduction in hours); Jachim,

---

[2] Several courts have used Treasury Regulations when interpreting COBRA. See, e.g., Gaskell v. Harvard Coop. Soc'y, 3 F.3d 495, 500 (1st Cir. 1993).

[3] Plaintiff argues that, because he was on sick leave, there was no reduction in the hours he was *required* to work. He is right. But that argument overlooks the second, alternative definition of "reduction in hours": "A reduction of hours of a covered employee's employment occurs whenever there is a decrease in the hours that a covered employee is required to work *or actually works*, but only if the decrease is not accompanied by an immediate termination of employment." 26 C.F.R. § 54.4980B-4(A-1)(e) (emphasis added).

- 5 -

783 F. Supp. at 1332 (noting that a sick leave reduced the hours the plaintiff "actually worked" from 40 per week to zero).

Plaintiff counters that paid sick leave is no different than FMLA leave, and that if FMLA leave is excluded from constituting a "reduction in hours," them the same result should inure for paid sick leave. This argument is unpersuasive. The construction of the applicable regulations leads to the conclusion that, if FMLA leave were not expressly excluded, it would count as a "reduction in hours." The regulation reads:

> A reduction of hours of a covered employee's employment occurs whenever there is a decrease in the hours that a covered employee is required to work or actually works, but only if the decrease is not accompanied by an immediate termination of employment. This is true regardless of whether the covered employee continues to perform services following the reduction of hours of employment. For example, an absence from work due to disability, a temporary layoff, or any other reason (***other than due to leave that is FMLA leave***; see § 54.4980B–10) is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment.

26 C.F.R. § 54.4980B-4(A-1)(e) (emphasis added). The regulation makes clear that an absence from work for any reason is a reduction in hours. Including the restrictive language "other than due to leave that is FMLA leave," heavily suggests that analogous leave—such as employer-offered sick leave—*does* qualify as a reduction of hours.

Moreover, the FMLA regulations make clear that an employer has no obligation to continue providing health benefits if any employee continues on leave following the exhaustion of FMLA leave. The regulations state that, "[e]xcept as required by [COBRA] . . ., an employer's obligation to maintain health benefits during leave . . . ceases if and when . . . the employee fails to return from leave or continues on leave after exhausting his or her FMLA leave entitlement in the 12–month period." 29 C.F.R. § 825.209(f). Thus, I am compelled to conclude

- 6 -

that Plaintiff's continued use of paid sick leave following the exhaustion of his FMLA leave was a reduction in hours.

Plaintiff argues that this conclusion goes against the purpose of COBRA, which is to extend health benefits when they would otherwise cease. The regulations applicable to the FMLA, however, make clear that an employer is not obligated to extend the benefits of FMLA if it has a more generous leave policy than mandated. "If an employer provides greater unpaid family leave rights than are afforded by FMLA, the employer is not required to extend additional rights afforded by FMLA, such as maintenance of health benefits (other than through COBRA), to the additional leave period not covered by FMLA." 29 C.F.R. § 825.700 (2013). There is no obligation under the law that an additional leave period beyond that granted by FMLA must be treated in the same manner as FMLA leave. It follows, therefore, that the City was under no legal obligation to extend the benefits inherent to FMLA leave (maintenance of health insurance benefits) to Plaintiff's paid sick leave in excess of twelve weeks.

The second question raises additional issues. A reduction in hours only triggers COBRA liability if that reduction would have resulted in Plaintiff's loss of health insurance benefits. Here, the City's policy makes clear that, if an employee does not return from FMLA leave, "the employee's benefits will be subject to COBRA and/or direct billing, as applicable, based upon the benefit." (Aff. of Wendy Carter Ex. 2, Oct. 13, 2014 [ECF No. 12-1].) This policy is clear cut and explicit and, "but for" COBRA continuation coverage, Plaintiff would have lost his health insurance.[4] Because he was unable to work following his FMLA leave, two consequences resulted: (1) Plaintiff experienced a reduction in hours; and (2) he fell into the City's "cancellation of benefits" policy. Because the first caused the second, he experienced a

---

[4] The City's policy states that, "***In all cases***, at the point of FMLA leave exhaustion, the employee's benefits will be subject to COBRA and/or direct billing, as applicable, based upon the benefit." (Carter Aff. Ex. 2 (emphasis added).)

- 7 -

Case 4:14-cv-00002-JLK-RSB   Document 26   Filed 12/11/14   Page 7 of 8   Pageid#: 237

"qualifying event" under COBRA. The City sent out the required continuation of coverage notices in compliance with COBRA. The City's actions fell within the ambit of the statute, and summary judgment is appropriate on the City's motion.[5]

## IV. CONCLUSION

When Plaintiff did not return to work following the exhaustion of his FMLA leave, the City's legal obligation under FMLA and COBRA to provide group health insurance benefits ended. Plaintiff's inability to return to work and the use of his paid sick leave reduced the hours he actually worked to zero. The City's policy mandated that an employee's group health insurance benefits be terminated if the employee fails to return to work following the exhaustion of FMLA leave. These two facts constitute a "qualifying event" under COBRA because, but for the continuation coverage, Plaintiff's reduction in hours would have resulted in the loss of his health insurance benefits. The City complied with COBRA by informing Plaintiff of his right to elect continuation coverage, and the City is entitled to summary judgment on Plaintiff's claim.

The Clerk is directed to forward a copy of this Opinion and accompanying Order to all counsel of record.

Entered this 11th day of December, 2014.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The Record is devoid of any facts regarding the terms of Plaintiff's employment or the benefits to which he was entitled as an employee. Nevertheless, the question of whether Plaintiff was entitled to health insurance benefits while on sick leave under his employment contract is not before the Court. It is conceivable that the City's implementation of its policy under an identical factual scenario would not violate COBRA, but would breach an employee's employment contract by denying him benefits to which he is entitled by contract. If the City's policy results in the cancellation of benefits to which an employee is otherwise entitled (because the City's policy states that exhaustion of FMLA leave without returning to work results in the cancellation of health insurance benefits "in every case"), that may very well be wrongful and actionable.